UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| GIUSEPPE ANGILERI, : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:16-cv-352(SRU) |
| : | |
| JOHN WU, ET AL., : | |
|     Defendants. : | |

### **INITIAL REVIEW ORDER**

The plaintiff, Giuseppe Angileri,[1] incarcerated and *pro se*, has filed an amended complaint alleging the defendants, Correctional Managed Health Care, the State of Connecticut Department of Corrections, John Wu, Augustus Mazzocca, Ricardo Ruiz, Isaac Moss, Deborah Wilson, "Cindy" [last name unidentified], and John/Jane Doe 1–5, violated the Eighth Amendment of the United States Constitution. *See* Am. Compl., Doc. No. 7. Angileri has also filed a motion for an order directing the defendants to comply with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. *See* Motion for Order, Doc. No. 8. For the reasons set forth below, the motion for order is denied and the complaint is dismissed in part.

**I.     Motion for Order [Doc. No. 8]**

Angileri's application to proceed *in forma pauperis* included a section in which Angileri agreed to permit the Department of Correction to deduct money from his inmate account to pay the full filing fee of $350.00. Angileri now contends that on one occasion in March 2016 the Department of Correction deducted too much money from his account towards the payment of the filing fee. He does not assert that he made any prior efforts to resolve this issue prior to filing

---

[1] The caption on this case currently refers to the plaintiff as "Giuseppe Angiler," but the plaintiff has signed the amended complaint as "Guiseppe Angileri," and the Connecticut Inmate Look-Up Service indicates that the inmate assigned No. 274969 is "Giuseppe Angileri." This Order refers to the plaintiff as "Guiseppe Angileri," and the Clerk is directed to change the case caption on the docket accordingly.

this motion. He now seeks a court order directing the Department of Correction to reimburse $44.49 to his account.

The Department of Correction has not yet forwarded any money from Angileri's inmate account to the court for the payment of the filing fee. It is the court's understanding that the Department of Correction waits to forward any money to the Clerk until the full amount of the filing fee has been collected from the inmate's account. Angileri has not alleged that he will suffer imminent harm if the relief requested is not granted. Accordingly, if he disagrees with the amount of money deducted by the Inmate Accounts Office of the Department of Correction, he should contact that office to resolve the issue. The motion [doc. No. 8] is denied.

**II.     Amended Complaint [Doc. No. 7]**

    A.     Standard of Review

Pursuant to section 1915A(b) of Title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that

includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

 B. Background

  The following facts are alleged in the amended complaint. *See* Am. Compl., Doc. No. 7. Angileri suffered an injury to his left shoulder and neck prior to his incarceration. During his incarceration, Angileri complained of chronic pain in his left shoulder that radiated down his arm and up to his neck. He underwent an MRI of his left shoulder in June 2013. Following the MRI, prison medical staff submitted a request that Angileri be approved for surgery to his shoulder. The Utilization Review Committee approved the request and Dr. Mazzocca performed rotator cuff surgery in August 2013.

  Dr. Mazzocca's post-operative instructions included restrictions on weight bearing, an order that Angileri wear a sling and a brace, and a prescription for pain medication; however, Dr. Ruiz discontinued Angileri's pain medication prematurely despite his complaints of continuing pain after the surgery. The pain medication was reinstated two weeks later. In October 2013, Nurse Wilson required Angileri to move his property to a new cell despite his medical condition. Angileri claims that he experienced an increase in pain in his left shoulder as a result of the move.

In March 2014, Angileri underwent a follow-up MRI of his left shoulder. A physician reviewed the MRI and noted abnormal spacing in the cervical vertebral canals. The MRI also reflected that the rotator cuff surgery had caused nerves in his neck to be pinched. An additional MRI in July 2014 reflected deterioration of the left shoulder tendon and fluid retention. In September 2014, Nurse "Cindy" discontinued one of Angileri's prescription medications, as well as an order that he be provided with ice for his neck pain on a daily basis, despite Angileri's on-going pain.

A nerve conduction study performed on Angileri's left shoulder in October or November 2014 showed severe nerve damage. Dr. Mazzocca informed Angileri that the nerve damage to his neck was the cause of the nerve damage to his left shoulder. On November 12, 2014, Angileri underwent a second surgery on his left shoulder. A December 2014 MRI of Angileri's cervical spine showed joint degeneration, disc protrusion and spinal canal stenosis. Between December 2014 and July 2015, medical staff again discontinued Angileri's pain medication on various occasions, despite the plaintiff's complaints of pain.

An MRI of the Angileri's right shoulder in November 2015 showed a tear in the tendons and rotator cuff damage. No follow up appointment was scheduled with medical staff regarding those injuries. On December 23, 2015, Dr. Moss performed surgery on Angileri's neck to fuse the C4 through C7 vertebrae. Dr. Moss failed to discuss the outcome of the surgery or follow-up with Angileri in a timely manner.

Angileri filed a habeas petition in state court seeking pain medication and treatment for his neck and shoulder. In mid-February 2016, after a hearing held in the habeas matter and pursuant to an order of the court, Dr. Wu ordered additional pain medication for Angileri.

On February 22, 2016, John Doe, a medical student at the University of Connecticut Health Center, examined Angileri during an appointment to follow-up on his neck surgery. Angileri stated that he had experienced pain in his neck following the surgery. The medical student informed Angileri that it was too early for another MRI. The medical student then insulted Angileri by asking whether he was a heroin user. At the time, Angileri was taking methadone as a pain reliever.

Angileri claims that the pain in both his shoulders was due to the untreated cervical spine damage. He contends that Dr. Mazzocca inappropriately failed to identify the damage to his cervical spine when he performed rotator cuff surgery on Angileri's left shoulder in August 2013. Angileri states that he now has permanent nerve damage in his left shoulder and neck and cannot regrow any muscle in his left shoulder. He contends that these conditions are due to incomplete and ineffective surgery performed by Dr. Mazzocca. Angileri has also suffered from chronic pain in his neck and shoulder. He contends that the nerve damage to his neck and shoulder has gone untreated and the medication prescribed for his pain is ineffective. Angileri asserts that he has exhausted all available administrative remedies.

    C.    Discussion

1. *Correctional Managed Health Care and Department of Correction*

To state a claim under section 1983, the plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). Neither the State of Connecticut Department of Correction nor Correctional Managed Health Care is a person subject to suit under 42 U.S.C. § 1983.

5

A state agency is not a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983). The Department of Correction is a state agency. *See Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008); *Garris v. Department of Correction*, 170 F. Supp. 2d 182, 186 (D. Conn. 2001). Like other state agencies, the Department of Correction is not a person within the meaning of section 1983. *See Santos v. Dep't of Corr.*, 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (observing that "[n]either a Department of Correction nor a correctional institution is a person" subject to liability under section 1983); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001) (same). Thus, the claims against defendant State of Connecticut Department of Correction are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

Correctional Managed Health Care ("CMHC") provides medical treatment to inmates and "is a division of a state agency, the University of Connecticut Health Center." *Jolly v. Correctional Managed Health Care*, 2009 WL 233667, at *3 (D. Conn. Jan. 30, 2009), *aff'd*, 375 F. App'x 67 (2d Cir. 2010). Because Correctional Managed Health Care is a division of a state agency, it is not considered to be a person subject to suit under section 1983. *See Gaby v. Board of Trustees of Community Technical Colleges*, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state universities and their boards of trustees are not persons within the meaning of section 1983)*; Walker v. Connecticut*, 2006 WL 1981783, at *2 (D. Conn. Mar. 15, 2006) (dismissing action against CMHC under section 1983 because CMHC is not a "person" within the meaning of the statute); *see also Stewart v. John Dempsey Hospital*, 2004 WL 78145, at *2 (D. Conn. Jan. 9, 2004) (holding that John Dempsey Hospital University of

Connecticut Health Center is not a person within the meaning of section 1983). The claims against Correctional Managed Health Care are accordingly dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

   2. *John/Jane Does 1–5*

In his description of the parties, Angileri identifies five unnamed individuals as medical practitioners who worked for CMHC and were involved in his treatment during the events set forth in the amended complaint. He states that he may need to engage in discovery to determine their specific involvement in his medical care. Angileri, however, only refers to one John Doe in the factual allegations of the amended complaint. He identifies that person as a medical student who examined him in February 2016 after his neck surgery. Assuming that the John Doe medical student is one of the John/Jane Doe 1–5 defendants listed in the caption and the description of parties, the allegations against him do not constitute deliberate indifference to medical needs.

The John Doe medical student allegedly examined Angileri on one occasion in February 2016, indicated that it was too soon for the plaintiff to undergo another MRI, and in response to Angileri's request to increase his pain medication, insulted him by asking whether he was a heroin user. Angileri asserts that, prior to his examination by the John Doe medical student, he had filed a state habeas petition seeking pain medication and medical treatment. In response to a court order issued in the habeas mater, Dr. Wu ordered Methadone to treat Angileri's pain. Thus, Angileri's concerns and requests for pain medication had already been addressed in the state habeas petition at the time the medical student allegedly examined him. Angileri accordingly has not alleged that the John Doe medical student was deliberately indifferent to his medical needs.

The plaintiff does not otherwise refer to any other John or Jane Doe defendants in the body of the complaint. As such, he has not alleged that the remaining John/Jane Doe defendants have been deliberately indifferent to his medical needs, and the claims against them are dismissed. *See* 28 U.S.C. § 1915A(b)(1).[2]

3. *Official Capacity Claims for Monetary Damages*

Angileri seeks monetary damages, declaratory and injunctive relief. To the extent that the plaintiff seeks damages from defendants Wu, Mazzocca, Ruiz, Moss, "Cindy," and Wilson in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

4. *Remaining Claims Against Defendants Wu, Mazzocca, Ruiz, Moss, "Cindy," and Wilson*

The court concludes that Angileri has stated plausible claims Eighth Amendment claims of deliberate indifference to health, safety and medical needs against Drs. Wu, Mazzocca, Ruiz, and Moss and Nurses "Cindy" and Wilson. Angileri has also asserted negligence claims against defendants Mazzocca, Ruiz, Moss, Wilson, and "Cindy," as well as medical malpractice claims against defendant Mazzocca. The Eighth Amendment claims will proceed against defendants Wu, Mazzocca, Ruiz, Moss, "Cindy," and Wilson in their individual capacities and their official capacities to the extent that the plaintiff seeks declaratory and injunctive relief. In addition, the state law negligence claims will proceed against defendants Wu, Mazzocca, Ruiz, Moss, "Cindy," and Wilson in their individual and official capacities, and the state law medical

---

[2] If Angileri is later able to identify one or more of the Doe individuals by name and can assert facts to show that the individual was or the individuals were deliberately indifferent to his medical needs, he may file a motion for leave to file an amended complaint to add the individual or individuals as a defendant or defendants.

malpractice claim will proceed against defendant Mazzocca in his individual and official capacities.

## ORDERS

The Court enters the following orders:

(1)     The Motion for Order [**Doc. No. 8**] is **DENIED**. The claims set forth in the Amended Complaint [**Doc. No. 7**] against defendants Department of Correction, Correctional Managed Health Care and John/Jane Doe 1–5 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), and the claims for monetary damages against defendants Wu, Mazzocca, Ruiz, Moss, "Cindy," and Wilson are **DISMISSED** in their official capacities pursuant to 28 U.S.C. § 1915A(b)(2). The Eighth Amendment claims will proceed against defendants Wu, Mazzocca, Ruiz, Moss, "Cindy," and Wilson in their individual capacities and their official capacities to the extent that the plaintiff seeks declaratory and injunctive relief. In addition, the state law negligence claims will proceed against defendants Wu, Mazzocca, Ruiz, Moss, "Cindy," and Wilson in their individual and official capacities and the state law medical malpractice claim will proceed against defendant Mazzocca in his individual and official capacities.

(2)     Within twenty-one (21) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the amended complaint and this order on defendants Dr. John Wu, Dr. Augustus Mazzocca, Dr. Ricardo Ruiz, Dr. Isaac Moss, Nurse Deborah Wilson, and Nurse "Cindy" in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Dr. John Wu,

Dr. Augustus Mazzocca, Dr. Ricardo Ruiz, Dr. Isaac Moss, Nurse Deborah Wilson, and Nurse "Cindy" and mail a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     The remaining defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that the plaintiff MUST notify the court. Failure to do so

can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or attorney for the defendant of his new address.

      SO ORDERED at Bridgeport, Connecticut this 28th day of June 2016.

                                                       /s/ Stefan R. Underhill
                                                  Stefan R. Underhill
                                                  United States District Judge